IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TAJ BECKER, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>J. DENIS KROLL, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS GARDNER'S AND EVANS' MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:02-CV-24 TS |

## I. INTRODUCTION

Defendants David Gardner and Gale Evans (Defendants) assert that their internet publication of an official report containing allegedly false information is subject to absolute immunity under Utah Code Ann. § 45-2-3(1)'s privilege for actions in the "proper discharge of an official duty." They contend that the Tenth Circuit's earlier ruling that summary judgment should not be granted on their claims of immunity under that statute was limited to only a claim of qualified immunity.[1] The Court denies the Motion because the Tenth

---

[1] *Becker v. Kroll*, 494 F.3d 904, 928 (10th Cir. 2007).

1

Circuit's ruling is the law of the case and, even if that ruling did not also encompass a claim of absolute immunity, Defendants have not shown the internet publication was made pursuant to an "official duty" within the meaning of § 45-2-3(1) .

## II. FACTUAL BACKGROUND

The factual background is fully set forth in the *Becker* opinion as well as the Court's ruling on the other Defendants' Motion for Summary Judgment.[2] For the purposes of the present Motion, the following factual allegations are relevant.

In November 1998, Utah's Medicaid Fraud Control Unit (MFCU) was under pressure to make greater recoveries. A research analyst for MFCU flagged Plaintiff Becker, a St. George neurologist, as possibly having up-coded Medicaid costs. Up-coding is the practice of overcharging the Medicaid program for services. MFCU instituted an investigation of the alleged up-coding and eventually filed a civil suit against Plaintiff. The civil suit was subsequently dismissed.

Plaintiff and her husband began speaking out against MFCU by writing and contacting state governmental officials and the federal Office of the Inspector General (OIG), alleging that MFCU employed bullying tactics to extort money from rural doctors and complaining about a lack of oversight and possible abuses. Their efforts were part of a larger and on-going political debate in the same time frame that resulted in management changes at MFCU and a transfer of MFCU from the Department of Public Safety to the Attorney General's office. Shortly after Plaintiff's husband testified before a legislative

---

[2]Docket No. 225.

committee regarding MFCU, the state filed criminal charges against Plaintiff based on the alleged up-coding. The criminal charges were subsequently dismissed due to irregularities in the investigation. The billing allegations were then referred to an administrative hearing wherein Plaintiff was cleared.

MFCU sends an annual report to the Secretary of the United States Department of Health and Human Services as required by a federal regulation.[3] When the annual report submitted in 2001 was prepared, Gardner was an assistant Attorney General in MFCU and Evans was its director. Gardner drafted the portion of the report discussing Plaintiff and submitted it to Evans. Gardner says he submitted the material to Evans only as a rough draft, but Evans says he only reviewed it for grammar.

Despite the resolution of all up-coding billing allegations entirely in Plaintiff's favor, MFCU's annual report for that year "was worded in a way to make it appear as through Becker was guilty of up-coding despite the dismissal of the criminal case and the later administrative determination in [her] favor . . . ."[4]

Evans made the decision to place the report on MFCU's internet site after discussion with Garner and several others. Gardner informed Evans it could be released on the MFCU's internet site. At the time the report was published on MFCU's internet site, there was no requirement by the OIG or any other entity that MFCU publish the report to the public or on MFCU's internet site in particular.[5]

---

[3]Defs' Ex. B, Evans Dep. at 26-27. Reply at 6.

[4]*Becker*, 494 F.3d at 912.

[5]Def.s' Ex. B, Evans Dep. at 62-63.

III.  PROCEDURAL BACKGROUND

Becker filed this action under §1983 and state law. There was a previous grant of summary judgment in favor of all Defendants on all claims. The Tenth Circuit remanded some claims against some Defendants, including Plaintiff's state law libel claims against Gardner and Evans. It extensively examined the dismissal of those libel claims for the failure to show malice as required by the Utah Governmental Immunity Act[6] because it found Plaintiff had shown the malice required under that act. It further considered Defendant's alternative argument for immunity under § 45-2-3(1):

> Gardner and Evans also argue that their involvement in the case summary is immune under Utah law. Under Utah's libel law, a report required by state or federal law is immune from suits for libel or slander if made "*in the proper discharge of an official duty*" or "by a fair and true report, without malice, of a judicial, legislative or other public official proceeding." Utah Code Ann. § *45-2-3(1)* and (4). Evans and Gardner claim the privilege from suit *because the MFCU annual report is a publication required by the federal government* as part of Utah's participation in the Medicaid program. While the statute will provide an immunity from suit for "fair and true" reports, it expressly provides the same state-of-mind exception as the governmental immunity statute-malice.
> In sum, the district court erred in dismissing Becker's state law libel claim against Gardner and Evans for failure to present evidence of malice.[7]

The last sentence appears to refer to the reason that the claims were originally dismissed under Utah's Governmental Immunity Act. Defendants now move for summary judgment asserting absolute immunity under Utah Code Ann. § 45-2-3(1).

---

[6]Then codified at Utah Code Ann. § 63-30-4(3)(b)(i). In 2004, the legislature replaced the Utah Governmental Immunity Act, Utah Code Ann. §§ 63-30-1 to -38 (1997), with the Governmental Immunity Act of Utah. Utah Code Ann. §§ 63-30d-101 to -904 (2004). *Peck v. State*, 191 P.3d 4, n.1 (Utah 2008).

[7]*Becker*, 494 F.3d at 928 (emphasis added).

4

## IV. SUMMARY JUDGMENT

Summary judgment is appropriate only when "there is no genuine issue as to any material fact." We determine whether the evidence proffered by the plaintiff, if believed by the fact-finder, would be sufficient to sustain the claim, and draw all reasonable inferences from the evidence in the manner most favorable to the plaintiff.[8]

Evans and Gardner seek immunity from Plaintiff's state law libel claims under Utah Code Ann. § 45-2-3(1). That statute provides: "A privileged publication or broadcast which shall not be considered as libelous or slanderous per se, is one made: (1) in the proper discharge of an official duty." They contend that under Utah law there is a distinction between the absolute immunity granted under subsection (1) of the statute, covering the discharge of an official duty, and the qualified immunity granted under subsection (4), covering fair and true reports of official proceedings. They contend that because the MFCU annual report is required by the federal government as part of Utah's participation in the Medicaid program, their act in publishing that report on MFCU'S internet site is part of their "official duties" and is therefore covered by absolute immunity under § 45-2-3(1). They contend that despite its language to the contrary, the *Becker* decision did not rule on their claim of absolute immunity under subsection (1) because they did not raise the critical distinction of the type of immunity they were claiming under subsection (1) in their first motion for summary judgment or in the appeal of their first motion. Accordingly, they contend that the *Becker* decision cannot be read to have ruled on their claim of absolute immunity or, if it did make such a ruling, they claim such ruling must be either dicta or

---

[8] *Id.* at 912-13 (quoting Fed.R.Civ.P. 56(c)) (citations omitted).

5

erroneous because Utah law affords an absolute rather than conditional privilege to subsection (1).[9]

Plaintiff contends that this issue was specifically decided in the *Becker* decision and that the ruling is now law of the case. Plaintiff also contends that for an act to be an official duty within the meaning of the statute, it must be statutorily required, relying on the Montana Supreme Court's interpretation of the identical language in its statute.[10] Plaintiff also contends that an "official duty" within the meaning of the statute covers only policy-making functions and that the statute applies only to broadcasters of television, radio and the print media.

Addressing Defendants' first argument, it is baffling why any public official who believed that he or she enjoyed absolute immunity from suit under a Utah statute would not have clearly raised that purported absolute immunity at the earliest possible opportunity in the action. But it does appear from their briefing on their first motion for summary judgment that Defendants did not therein raise their claim of absolute immunity under § 45-2-3(1).[11] They did, however, raise that immunity claim under § 45-2-3(1) as an alternative

---

[9]Defendants contend that the law of the case doctrine does not apply to an erroneous ruling. But Defendants provide no authority that would allow a trial court to declare a decision of its court of appeals to be erroneous and, therefore, not the law of the case.

[10]*Hale v. City of Billings, Montana*, 986 P.2d 413 (1999).

[11]Nor do Defendants appear to have raised absolute immunity under § 45-2-3(1) in their Answer to Third Amended Complaint, which assets as affirmative defenses that they are entitled to "absolute *prosecutorial* immunity and to *qualified* immunity." Docket No. 122, Amended Answer at 18 (emphasis added). Gardner's *prosecutorial* immunity is not at issue.

ground for affirming the grant of summary judgment in their appellate brief. As evidenced by the *Becker* decision's discussion of Defendants' claim of privilege as based on the fact that "the MFCU annual report is a publication required by the federal government,"[12] the subsection (1) claim of immunity was considered and rejected as a basis for affirming the grant of summary judgment. Defendants argue that the ruling on subsection (1) is not the law of the case because the ruling did not address the assertion of absolute, rather than qualified immunity under the statute.

The Court agrees that the *Becker* decision's statement that immunity from suit for "fair and true" reports requires the same malice state-of-mind exception as the governmental immunity statute, does not appear to also apply to Defendants' claim of immunity under subsection (1) for "proper discharge of an official duty." Defendants argue that it does not. Plaintiff appears to concede that it does not.[13] However, the Court finds that it need not determine that issue because, even if the Becker decision does not cover an assertion of absolute, instead of qualified, immunity under subsection (1), Defendants have not shown that they are entitled to summary judgment under subsection (1) regardless of the type of immunity it affords.

There is no Utah case law actually applying the "proper discharge of a public duty" immunity. For example, in *Carter v. Jackson,*[14] the Court made the following general

---

[12]*Becker*, 494 F.3d at 928.

[13]Pl.'s Mem. at 1 (stating that the *Becker* decision noted that the malice requirement exists under § 45-2-1 et. seq. "at least with respect to . . . § 45-2-3(4)."

[14]351 P.2d 957, 958 (Utah 1960).

7

statements about the immunity under subsections (1) and (2) of §45-2-3, but then decided the case on the subsection (2), not subsection (1), grounds:

> There are two classes of privileged communications, absolute and qualified or conditional. In the case of absolutely privileged communications the utterance or publication, although both false and malicious, does not give rise to a cause of action. . . .
>
> Subsections (1) and (2) of [§] 45-2-3, . . . define the communications that are absolutely privileged. The question is whether the defendant's statement, in his capacity as a member of a city council and made at a regular meeting of the council, was an absolutely privileged communication. The trial judge correctly held that it was and directed a verdict of no cause of action.
>
> By virtue of 10-6-5, U.C.A.1953 the city council was the legislative and governing body of South Salt Lake, and its meeting was certainly an 'official proceeding authorized by law' *as provided for in subsection (2)* of [§]45-2-3, U.C.A.1953.
>
> The statement of the defendant was made in his official capacity in an official proceeding authorized by law and it had a reasonable relationship to the subject of the meeting. The statement, therefore, was absolutely privileged.

Similarly, in *Seegmiller v. KSL, Inc.*,[15] the Utah Supreme Court generally noted in a footnote that "subsections (1) and (2) of [sections 45-2-3 and 45-2-10] provide a privilege which cannot be overcome by proof of malice. The remaining subsections set out conditional privileges."[16] But the *Seegmiller* court did not otherwise consider or apply subsection (1).

---

[15] 626 P.2d 968 (Utah, 1981).

[16] *Id*. at 977 n.8.

8

In the absence of Utah case law construing this privilege, the Court must endeavor to predict how the Utah Supreme Court would rule.[17] In so doing, the Court looks to the plain language of subsection (1). Duty means "obligatory tasks, conduct, service, or functions that arise from one's position (as in life or in a group)."[18] Official means "prescribed or recognized as authorized" or "of or relating to an office [or] position"[19] Thus, to be an "official duty," the duty must be prescribed, such as by statute; or specifically recognized, as by rule; but also must be in relation to the obligatory tasks or functions that arise from the office the individual holds. Under this reading, something more is required to be covered by the "official duty" immunity than the fact that an act may not be officially prohibited.

This reading is similar to how the Utah Supreme Court read the term "judicial duty" in *In re Worthen*.[20] In *Worthen*, the court looked to the list of duties prescribed in the Judicial Canons of Conduct as the source for "judicial duties" as used in Utah Const. art. VIII, § 13 and Utah Code Ann. § 78-7-28(1).[21] It is also in accordance with Utah Supreme

---

[17] *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (holding that "[w]hen the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.")

[18] Merriam-Webster Online Dictionary, s.v. "duty," http://www.merriam-webster.com (last visited September 29, 2009).

[19] Merriam-Webster Online Dictionary, s.v. "official," http://www.merriam-webster.com (last visited September 29, 2009) (showing "official duties" as an example for "of or relating to an office, [or] position").

[20] 926 P.2d 853, 869 (Utah 1966).

[21] *Id*. at 869

9

Court's reading of a grant of immunity for conduct "in the course of official duties" in *Pendleton v. Utah State Bar*,[22] a case relied upon by Defendants. In *Pendleton*, the Rules of Lawyer Discipline and Disability (RLDD) granted immunity to participants in attorney disciplinary proceedings "for any conduct in the course of their official duties."[23] The plaintiff argued that the Bar, its counsel, and its staff libeled him by publishing news of his interim suspension and the circumstances surrounding his suspension. The Utah Supreme Court looked to the RLDD's list of powers and duties of the senior counsel and staff to determine whether the defendants had been acting within the course of their official duties when they published the allegedly defaming article. Because the RLDD also defined the bar prosecutor's duty including a duty to "disseminate public disciplinary results to the Bar and the public," the Utah Supreme Court held that defendants were acting within the course of their official duties when they published the article. The Utah Supreme Court also held that even if publishing the details surrounding the suspension was more than required by the rule, the act of publishing the article was nevertheless within the course of the defendants' official duty under the rule "to provide the members of the Bar with disciplinary results and educate them about improper conduct."[24]

This reading of the statute is in accordance with how the identical statutory language is interpreted in other states. For example in *Hale v. City of Billings, Montana*,[25] the

---

[22] 16 P.3d 1230, 1232 (Utah 2000).

[23] RLDD 13.

[24] *Pendleton*, 16 P.3d at 1233.

[25] 986 P.2d 413.

10

Montana Supreme Court held that the "the discharge of an official duty, one which requires a statutory mandate from the legislature, confers an 'absolute' privilege and thereby an absolute defense to a libel action."[26] Thus, "an absolute privilege may be invoked by one who is required by law to publish defamatory matter."[27] However, the Montana court also held that the statute could also encompass a lesser qualified standard where the duty was not mandated by the legislature, but was instead only a "requisite of a person's employment."[28]

In *Wilson v. City of Tulsa*,[29] the court looked to the police chief's official job description to find that the issuing of a press release pursuant to the police's standard policy was in the proper discharge of an official duty.

In the alternative, Defendants argue that if a legislatively mandated duty is required such a duty is found in various Utah statutes providing that the legislative intent is to promote the public's right of easy and reasonable access to unrestricted public records;[30] provide a right of individuals to inspect "a public record" free of charge and take a copy;[31] and classify records as public unless otherwise expressly provided.[32]

---

[26] *Id*. at 506.

[27] *Id.* at 507 (citing Restatement (Second) of Torts § 592A).

[28] *Id*.

[29] 91 P.3d 673, 680-81 (Okla. Civ. App. 2004).

[30] Now codified at Utah Code Ann. § 63G-2-102(3)(1) (2008).

[31] Now codified at Utah Code Ann. § 63G-2-201(1) (2008).

[32] Now codified at Utah Code Ann. § 63G-2-201(2) (2008).

The Court finds that a general expression of legislative intent does not, without more, give rise to an official duty by a specific official. Nor does a request by an individual to have a copy of a public document give rise to an "official duty" to place that document on an internet site. The Utah Legislature is specific when it seeks to impose such duties for public dissemination, as are the Utah Administrative Rules.[33]

In this case, unlike *Pendleton*, there is no evidence that Gardner and Evans were acting pursuant to an official duty when they placed the allegedly defamatory report on the MFCU internet site. Because there is no evidence of an "official duty" to place the report on the MFCU's internet website,[34] the Court need not also determine the meaning of the term "proper conduct."[35]

In conclusion, Defendants have not shown that the *Becker* decision is not binding and, if it does not cover a claim of absolute as well as qualified immunity, they have not shown that they are entitled to summary judgment on absolute immunity under § 45-2-3(1).

---

[33] *See e.g.* Utah Code Ann. § 13-11-7 (providing enforcing agency shall inform consumers on a continuing basis of certain information and stating when certain public disclosure not permitted ) and Utah Admin. Code R152-1-2 (requiring that the Utah Department of Commerce, Division of Consumer Protection "shall place" names and identifying information of individuals or businesses on a "Buyer Beware List" under enumerated circumstances).

[34] Not only is there no evidence of an "official duty" for either Defendant to publically disseminate the report prepared for the OIG, there is also an issue of fact on whether the duties of Gardner, a prosecutor, included preparing MFCU's annual report.

[35] *See e.g. Denke v. Shoemaker*, 198 P.3d 284, 302-03 (Mont. 2008) (holding that unlawful retaliatory conduct does not qualify as "the proper discharge of an official duty" for purposes of MCA § 27-1-804(1)).

## V. ORDER

Based on the foregoing, it is

ORDERED that Defendants Gardner's and Evans' Motion for Summary Judgment (Docket No. 201) is DENIED. It is further

ORDERED that pursuant to the Court's standard policy, this case will be referred to a settlement conference and will also be set for a four-day jury trial.

DATED   September 29, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge